UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**LANITA DOTSON,**

       Plaintiff,

v.

                Case No. 16-cv-1008-pp

**CO ZIELIEKE,**
**CO HERNANDEZ and**
**LT CHASE,**

       Defendants.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2) AND SCREENING PLAINTIFF'S COMPLAINT (DKT. NO. 1)**

---

  The plaintiff, a Wisconsin state prisoner who is representing herself, filed a civil rights action under 42 U.S.C. §1983, alleging that the defendants were deliberately indifferent to her serious medical condition. Dkt. No. 1. She petitioned for leave to proceed without prepayment of the full filing fee, and the court ordered her to pay an initial partial filing fee of $13.30. Dkt. Nos. 2, 5. On August 19, 2016, the plaintiff paid the filing fee in full. The case is before the court for screening of the plaintiff's complaint pursuant to 28 U.S.C. §1915A.

  **I. SCREENING OF THE PLAINTIFF'S COMPLAINT**

    A. <u>Standard for Screening Complaints</u>

  The Prison Litigation Reform Act ("PLRA") applies to this action because the plaintiff was incarcerated when she filed her complaint. 28 U.S.C. § 1915. Even when the plaintiff pays the filing fee in full, the PLRA requires courts to screen any complaint brought by inmates seeking relief against a governmental

1

entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court may dismiss an action or portion thereof if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [she] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. c Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Indeed, allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis set forth in Twombly to determine whether a complaint states a claim. Iqbal, 556 U.S. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether

2

the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that the defendants: 1) deprived her of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980).

B.   Facts Alleged in the Complaint

On July 11, 2016, the on-call psychologist at Taycheedah Correctional Institution ("TCI") placed the plaintiff in "observation status"[1] because she was not eating, was not drinking, was not taking her prescribed psychotropic medication, and was engaging in self-harm by pulling skin off her arm. Dkt. No. 1 at 2. Around 10 or 11p.m. that night, the plaintiff asked to speak with a lieutenant or captain because she had been having "continued thoughts of wanting to self-harm." Id. at 3. Lieutenant Chase went to the plaintiff's observation cell, and the plaintiff showed Chase her bleeding arm. Id. The plaintiff had "pull[ed] off a tattoo that was on [her] left arm" and was "putting the skin from [her] arm in a cup." Id.

---

[1] Observation status is used to monitor inmates that are at risk of self-harm. Dkt. No. 1 at 2-3. When on observation status, inmates are placed in "observation cells" that are located directly in front of the officer's station. Id. at 4. Standard protocol on observation status is for the on-duty officer to check in on the inmate every 15 minutes and write down what the inmate was doing at the time. Id. at 3. If the inmate was self-harming, the officer reports the incident to the supervisor for further action and medical care. Id.

3

Upon seeing the plaintiff's arm, Chase "made a gagging face" and said, "your [sic] nasty." Id. Chase asked the plaintiff why she was pulling skin from her arm, and the plaintiff replied that "she couldn't stop self-harming and needed to be tied down in restraints for her own protection." Id. Chase stated that he would not put the plaintiff in restraints, and he left the unit. Id. at 3-4.

The plaintiff started crying, screaming and asking for help. Id. at 4. The plaintiff then "dug into [her] left arm which was bleeding badly [and] proceeded to write on the back wall of the observation cell with her own blood writing, 'I WANT ICE!'" Id. The defendants did nothing. Id. The plaintiff continued to self-harm throughout the night. Id. Correctional Officers Zielieke and Hernandez conducted their routine rounds ("15 minute checks" of the observation cells) throughout the entire night, and failed to report the incident to their supervisor. Id. Neither asked the plaintiff how she was doing, though the plaintiff alleges that they clearly could see blood in her cell and all over the walls. Id.

The next morning, the first shift officers called the nurse to examine the plaintiff's arm. Id. The nurse diagnosed the plaintiff with an infection and prescribed antibiotics for seven days. Id. While the plaintiff was gone, the janitor cleaned the blood off the wall in her observation cell. Id. For relief, the plaintiff seeks monetary damages. Id. at 5.

C.   Legal Analysis of Alleged Facts

The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 511 U.S. 825,

832 (1994). To state a claim under the Eighth Amendment, a plaintiff must allege that jail officials were "deliberately indifferent" to a substantial risk of serious harm to inmate health or safety. Id. at 834. Jail officials act with deliberate indifference when they know of a substantial risk of serious harm and either act or fail to act in disregard of that risk. Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). A medical need is considered sufficiently "serious" if the inmate's condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011) (quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005).

Suicide, attempted suicide, and other acts of self-harm pose a "serious" risk to an inmate's health and safety. See Collins v. Seeman, 462 F.3d 757, 760 (quoting Sanville v. McCaughtry, 266 F.3d 724, 733 (7th Cir. 2001)); see also Rice ex rel. Rice v. Corr. Med. Servs., 675 F.3d 650, 665 (7th Cir. 2012) ("[P]rison officials have an obligation to intervene when they know a prisoner suffers from self-destructive tendencies."). Nevertheless, liability under the deliberate indifference standard "requires more than negligence, gross negligence or even recklessness; rather, it is satisfied only by conduct that approaches intentional wrongdoing, *i.e.,* 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Goodvine v. Ankarlo, 9 F. Supp. 3d 899, 934 (W.D. Wis. 2014) (quoting Farmer, 511 U.S. at 835).

The plaintiff has alleged sufficient facts for the court to allow her to proceed on a claim of deliberate indifference to a serious medical condition. The

plaintiff alleges that she was already in "observation status" when she notified Chase that she had "continued thoughts of wanting to self-harm" and needed to be placed in restraints. Chase failed to place her in restraints, and when the plaintiff did later self-harm by cutting herself and pulling bloody, tattooed skin off of her arm, Chase, Zielieke and Hernandez did nothing. Instead, they continued with their rounds every fifteen minutes without reporting the incident to a supervisor or providing medical care. The plaintiff did not receive medical care until the next morning, by which time her arm had become infected. The plaintiff's allegations imply that the defendants knew that she was self-harming, because they could see the blood on her walls, and they intentionally disregarded her needs by failing to report the incident to a supervisor as required by prison protocol. The plaintiff, therefore, may proceed with her §1983 claim for deliberate indifference.

## II. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2).

The court **ORDERS** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order will be sent electronically to the Wisconsin Department of Justice for service on CO Zielieke, CO Hernandez and Lt Chase. The defendants shall file a responsive pleading to the complaint within **sixty (60)** days of receiving electronic notice of this order.

The court further **ORDERS** the plaintiff to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. Because the clerk will be electronically scanning and entering on the docket each document upon receipt, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. **The plaintiff should retain a personal copy of each document filed with the court.**

The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send a copy of this order to the warden of Taycheedah Correctional Institution, where the inmate is confined.

Dated in Milwaukee, Wisconsin this 19th day of December, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge